Green, Judge,
delivered the opinion:
Plaintiff brings this suit to recover $2,365.12 for services rendered and disbursements made in connection with a general average statement which plaintiff prepared at the request of the administrative officer of the United States Army Transport Service. The defense set up is that the evidence fails to show that the officer who directed the statement to be made had any authority to enter into a contract for that purpose.
It appears without dispute from the evidence that about August 22, 1922, the general superintendent and administrative officer of the United States Army Transport Service wrote to the plaintiff instructing it to prepare a statement of general average arising out of the damage done by fire to the cargo of the United States Army transport Logan, bound from San Francisco to Manila. The Logan was under the operation, management, and control of the defendant, and had a general cargo aboard belonging to various owners which was being transported free of charge. There is no evidence, however, that the Government had in any way obligated itself to transport this cargo, or any part of it, or had made any contract of any kind with reference to it. Some or all of this cargo was covered by insurance against general average losses. The fire was extinguished by pouring water into the hold, and as a consequence a portion of the cargo was damaged by water or fire. Under this situation, Captain Hugh Williams, administrative officer of the Army Transport Service, wrote plaintiff enclosing a file of papers with reference to the loss of the cargo by the fire to which reference has been made, and requested that a statement of general average be prepared in order that the responsibility of the various parties concerned might be determined. The plaintiff responded in effect that the matter would be promptly attended to. It prepared a general average statement and rendered a bill for $2,250 for its services in|the matter and $115.12 for disbursements connected therewith. The evidence shows that the charge made for preparing the statement was a reasonable one, and the disbursements necessary and proper in connection with its preparation.
*335 The plaintiff contends that the case is one to which it is proper to apply the maritime rule of general average, that it was the duty of the Government to have a general average statement prepared, and that the action of the officer of the Army Transport Service in requesting plaintiff to prepare such a statement made the Government liable for payment of plaintiff’s services. These contentions are disputed by defendant and present the issues in the case.
It is not necessary for us to determine whether the case presents facts for the application of the rule of general average as between the owners of the cargo. The underlying question in the case is whether the Government can be made liable under the principles of general average, and it will be observed in this connection that the statement for a general average was requested on account of the claim of the underwriters for a contribution. The evidence does not show the precise nature of this claim, but the only purpose that the underwriters could have had in asking for the statement would be to make it the basis of a claim that the Government should contribute towards payment of the losses on the cargo. So also it is obvious that unless the defendant could be held liable for contribution on account of the losses to the cargo, or might compel the cargo owners to contribute to the loss sustained by the vessel, the Government had no interest in having a general average statement made. The ultimate point to be determined is whether all of the losses caused by the fire would, under the circumstances of the case, be apportioned to both the ship and the cargo under the rule of general average. If the ship was not hable for contribution, the Government had no need for a statement of general average. In determining whether the principles of general average can be applied against the defendant in the case before us it becomes necessary that we should consider the origin and basis of the rule.
General average is defined to be a contribution by the several interests engaged in a maritime adventure to make good the loss of one of them, for voluntary sacrifices of a part of the ship or cargo, to save the residue of the property or the fives of those on board from an impending peril. 36 Cyc. p. 372, A. The principle of contri *336 bution in general average is of' very ancient origin, derived from the Rhodian law and applied by the inhabitants of the island of Rhodes who were noted in that day as mariners, centuries before the Christian era. The Romans adopted it and it eventually became a part of English law, and we in this country received it along with the common law of Great Britain. Some authorities assert that it depends on natural justice and equity arising out of the relation of the parties, while others hold that it arises out of a contract of affreightment and that the obligation to contribute is implied by law. Ordinarily when a ship carrying cargo, or on which it has been loaded, takes fire, and in extinguishing the fire the cargo is damaged to a greater or less extent, the rule of general average will apply, but the case at bar is a very exceptional one which, we think, takes it out of the general rule. So exceptional is the case that we can find no precedents to guide us, but must consider the foundation of the rule of general average and determine whether the reasons given for establishing it have any application to the instant case.
The case at bar differs from any other in which we are able to find that the rule of general average has been applied in that the cargo was being carried free. The defendant made no contract with reference to it, nor as we think, can any be implied. The acts of the defendant with reference to the cargo were merely permissive. The vessel was bound from San Francisco to Manila. The defendant permitted the cargo owners to place their cargo on board, but neither contracted to transport it nor to guard it. It was not in the situation of the owner of a vessel that takes any cargo offered for hire and therefore becomes subject to the rules pertaining to a common carrier, nor did it become a bailee for hire as when a vessel is chartered to carry a special cargo. It was very much in the position of the owner of a building who permitted another party to place goods therein, and in such case assumed no responsibility for theft or fire, or the consequences of a fire in the way of water damaging the goods.
When we consider this situation in connection with the theory and reasoning upon which the principles of general average are based, all reasons for applying it to the case against the defendant, as we think, disappear.
*337 In the first place, general average is applied only in cases of joint adventure; that is, the parties must have a common purpose, in part at least. It is well known that among' the ancients, and even down to a comparatively late date, it was quite common that arrangements should be made for ■ a voyage in which captain, crew, and cargo owners shared in the profits which might be made, and this practice to some extent is still followed, more particularly in fishing fleets. But even where the cargo is carried for hire, both the owner of the vessel and the owner of the cargo have a common purpose and are engaged in the joint enterprise of having the cargo conveyed and landed at the point of destination, and, what is still more important, the owner of the vessel is paid therefor. This payment is not merely for the conveyance of the cargo, but for taking charge of it as well, and the owner of the vessel becomes responsible for its delivery at destination subject to certain exceptions not necessary to .mention here. But in the instant case there was no common purpose, no joint enterprise or adventure in which defendant was concerned. Under the circumstances of the case at bar, we think no one Would contend but that if the Government, after the cargo had been loaded and while the vessel still lay at the wharf, had concluded that it wanted to send the vessel in a different direction and to a different port, it would have the right to do so, and could have told the owners of the cargo to unload it, and if they did not, could itself have taken the cargo out of the vessel and put it on the wharf. But if there had been a common adventure, it would have had no right to do this, for all of the parties thereto would be bound to perform their respective obligations incurred by reason of having entered upon it, and one of these obligations would of necessity have been the carrying of the cargo to the port of destination. This of itself, we think, shows conclusively that there was no common adventure.
In Ralli v. Troop, 157 U. S. 386, the principle that there must be a common adventure is emphasized over and. over again, and it was said by the court:
"Three important decisions in the courts of the United States directly support the position that, in order to give a right to contribution in general average, the sacrifice must *338 have been made for the safety of the common adventure, * *
The right to general average where there is a common adventure is well supported' by equitable principles. No good reason can be given why parties that engage in a joint enterprise should not share proportionately in losses which unavoidably result in attempting to carry out the joint adventure, and especially is it just that where the owner of the vessel is being paid to transport the cargo and is responsible for the care of the cargo, he should be subject to the rule of general average, if the cargo is injured in saving the ship. But in the case at bar the Government owed no duty to the owners of the cargo, except the duty not to injure it through negligence, of which there is no evidence and with which we would not be concerned in any event. What good reason can be given why the Government should be mulcted in damages (being guilty of no negligence) because it permitted the cargo owners to use part of the space on its vessel? We think it would be a new principle of law to permit a liability to rise solely and alone from a free or charitable act done in the first instance for the accommodation of the party seeking to recover damages. We conclude that the principle of general average does not apply to the Government in this case.
We do not overlook the decisions cited by plaintiff to sustain its position that the Government is liable herein. Our holding is not that the Government under no circumstances would be subject to the rules of general average, but that the case at bar is an exceptional one. The plaintiff cites a number of cases in support of its contention that the Government is liable for a general-average contribution to the same extent as a private individual. No doubt it is where it ships goods under a contract of affreightment, or charters a vessel to have its goods transported, and that is all that these cases hold. In such cases the Government is paying the vessel owner to carry the goods and take charge of them. It is engaged with the vessel owner and the owners of the remainder of the cargo in the common adventure and joint enterprise of having the cargo transported by the ship to its destination. But in the case at bar these essential elements do not appear, and the cases cited are not an authority for the position taken by plaintiff
*339 If we are correct in wbat is stated above, it follows that the Government had no interest in the statement of general average, because it would not in any event be liable to contribute for the loss on the cargo. Consequently no one could have any authority to contract for a statement of general average.
While counsel for defendant deny that the facts before the court present a case to which the rules of general average would apply as against the Government, they rest their case largely on the contention that Captain Williams, who was the administrative officer of the Army Transport Service, had in any event no authority to order a statement of general average to be made, and the question thus arising must also be considered.
The authority of Government officials to make a contract on behalf of the Government is never presumed but must be shown to exist through some constitutional or statutory provision, although it may be implied therefrom or from the nature of the duties of a Government official occupying an office lawfully created. It may be conceded for the purposes of the case that as administrative officer of the Army Transport Service, Captain Williams had the authority to do whatever was needful for the transportation of the defendant’s troops, together with their equipment and supplies so far as they belonged to the Government. The nature of his duties as such officer would imply such authority. But it is quite clear that he had no authority to contract for the transportation of cargo owned by other parties; and equally clear, as we think, that he had no authority to make the Government liable for contribution in case of injury to a cargo permitted to be on the Government transport, when the injury was caused by efforts made to preserve the vessel and cargo; and there is no evidence that he intended to do so when the cargo was placed on board the Government vessel. There is no evidence as to who, if anyone, gave permission for the cargo to be on the vessel, although it should be said in this connection that we do not think this would be material if it had been shown. Indeed, there is no evidence in the case as to just how the cargo came to be upon the Government vessel.
*340 The only matter to wbicb plaintiff calls onr attention as showing that Captain Williams had authority • to contract for such services is the fact that the Acting Judge Advocate General and Chief of the Administrative Law Division wrote a letter to the Quartermaster General of the United States, dated July 21, 1922, with reference to the claim of the marine underwriters for a contribution in general average, which letter stated, among other things, that—
“The claim being a valid one, it is therefore recommended that prompt steps be taken to ascertain the amount due the insurance company by way of contribution in general average. For. this purpose it is recommended that the matter be reférred to a general average adjuster.”
The letter further stated in substance that such procedure was necessary in order to ascertain the amount due the insurance company.
It may be inferred from the opinion of the Judge Advocate General, that the defendant might be liable for contribution to the insurance companies on account of losses, to the cargo. While the Judge Advocate General was acting within the scope of -his duties in rendering the opinion, he could not authorize a contract with reference to a general average statement, or, in other words, could not create authority where it did not exist. Moreover the opinion does not hold that Captain Williams had authority to make the contract in question, and if it did, the utmost that we can say with reference to it is that it is entitled to respectful consideration.
As we have in effect held that the administrative officer of the Army Transport Service had no authority to bind the Government to make a contribution either to the owners of the cargo or to the insurance companies, and that there was no implied obligation, it may appear to be superfluous to add that even if it was the duty of the Government, as owner of the vessel, to furnish a statement of general average our attention has not been called to any statutory provision, or any implication therefrom, which would authorize any person to bind the Government to pay for a statement of general average. It may possibly be asked, If Captain Williams did not have this authority, who did? But it is not necessary for us to determine whether anyone had such authority, for it does not follow that even if a duty was cast upon the *341 Government to furnish, a general average statement, any official bad been given authority to order one made. It is only necessary that we should determine whether Captain Williams had such authority, and we find nothing in. the nature of his position from which it might be implied even if the duty was cast upon the defendant to have one made. In this connection it should be noted that the preparation of the statement for general average was not for the benefit of the Government, but for the benefit of those who had insured the cargo. No claim is made that if the statement had not been ordered a liability would have been created against the Government. The only case cited in this connection where those .who prepared. a general average statement were held entitled to recover the cost of preparing such statment, is that of Coast Wrecking Co. v. Phoenix Insurance Co., 13 Fed. 127. This is a case in which a bond had been given for the expenses connected with the establishment of liabilities under the rule of general average, and a libel had been filed upon the vessel. The questions involved in the- case were altogether different from those in the case at bar and it it furnishes no authority in support of plaintiff’s position.
It follows from what has been stated that plaintiff’s petition must be dismissed and it is so ordered.
Whaley, Judge; Williams, Judge;, Littleton, Judge; and Booth, Chief Justice, concur.